UNITED STATES OF AMERICA,

        Plaintiff,

  v.

QUINTIN HERSEY,

        Defendant.

NO. CR-09-0452-DLJ

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

On September 4, 2008, the Court heard oral argument on Defendant Quintin Hersey's ("Hersey") motion to suppress the evidence on the ground that his Fourth Amendment rights were violated. Having considered the papers submitted, the arguments of counsel, and the applicable law, the Court DENIES the motion.

### I.  BACKGROUND

**A.   Factual Background and Procedural History**

Hersey was charged in an indictment as being a felon in possession of a firearm and ammunition in violation of Title 18 U.S.C. § 922(g)(1). This charge arose out of a seizure from Hersey's person conducted by deputies of the Contra Costa County Sheriff's Office.

At 12:36 a.m., on April 12, 2009, Contra Costa Sheriff's Deputies Shawn Welch ("Welch") and Justin Varday ("Varday") responded to a report of an attempted burglary at 523 Verde Avenue in North Richmond. The dispatcher informed the deputies that

"several subjects" were reportedly attempting to break into a residence occupied by two young females; that the girls had been involved in an altercation with another group of girls earlier that day; and, that it was unclear whether the current activity at the house was related to the earlier altercation.

As they approached the residence, the deputies encountered Hersey walking down the front steps. Welch recognized Hersey from several previous encounters. Welch believed that Hersey is a "validated Project Trojan" gang member who "is known to hang out and sell drugs in the area of 5th St. and Market Ave," and that Hersey rarely travels alone for fear of being shot by rival gangs.

Welch asked Hersey what he was doing at the residence. Hersey replied that he was visiting his girlfriend. Aware of the need to obtain further information to ascertain whether Hersey's statements were true or whether he was involved in the reported attempted burglary, Welch initiated an investigatory pat search of Hersey. Welch ordered Hersey to turn around and place his hands on the back of his head. Hersey began moving his hands toward the back of his head, but suddenly stopped. Welch repeated his order, but Hersey did not comply.

As a result, Welch grabbed Hersey's hands to force them to the back of his head. Hersey's arms began shaking, tensing, and resisting Welch. Fearing that something was wrong or that Hersey might possess a weapon, Welch spun Hersey face-first to the ground

and ordered him to place his hands on the back of his head.  Hersey complied and remained motionless on the ground.  At this point, a female shouted from an upstairs window that Hersey was her boyfriend, and to let him go because he did nothing wrong.  The deputies then placed Hersey in handcuffs and stood him up.  As Hersey rose to his feet, a loaded M-11 semi-automatic assault pistol fell from his waistband.

Welch stated that he transported Hersey to the patrol car where he read Hersey his Miranda rights from a department issued "Miranda card."  According to Welch, Hersey confirmed that he understood his rights and agreed to answer Welch's questions.  When Welch asked where the gun was acquired, Hersey replied that he found it in a "garbage can in the projects."

Hersey now moves to suppress the M-11 assault pistol, the ammunition seized from him, and all of his statements on the ground that the deputies arrested him in violation of the Fourth Amendment.  The government opposes the motion.

**B.     Legal Standard**

**1.     Fourth Amendment**

The Fourth Amendment protects the right of the people to be free from unreasonable searches and seizures by the government.  U.S. Const. Amend. IV.  To execute a search or seizure, the police must obtain a valid warrant or act pursuant to a delineated exception to the Fourth Amendment's warrant requirement.  Katz v.

3

United States, 389 U.S. 347, 356-57 (1967). If the Fourth Amendment has been violated, the exclusionary rule requires that resulting evidence must be suppressed. Mapp v. Ohio, 367 U.S. 643, 654 (1961). This rule also applies to derivative evidence because it is deemed to be "fruit [from] the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 488 (1963).

### 2. Terry Stop vs. Arrest

Under the Fourth Amendment, an officer may conduct a brief warrantless investigatory stop, if the officer has a reasonable and articulable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30-31 (1968). "A Terry stop involves no more than a brief stop, interrogation and, under the proper circumstances, a brief check for weapons." United States v. Robertson, 833 F.2d 777, 780 (9th Cir. 1987). "Beyond such a . . . narrowly circumscribed intrusion, an arrest occurs, for which probable cause is required." Id. Whether a Terry stop ripens into an arrest depends on the totality of the circumstances. United States v. Del Vizo, 918 F.2d 821, 824 (9th Cir. 1990). Generally, an arrest occurs if "a reasonable person would conclude that he was not free to leave after brief questioning." Id. The use of force, however, does not necessarily make a Terry stop an arrest, so long as the use of force "occurs under circumstances justifying fears for personal safety." United States v. Buffington, 815 F.2d 1292, 1300 (9th Cir. 1987).

4

## II. DISCUSSION

The parties do not dispute that Welch had a reasonable suspicion to conduct the initial Terry stop of Hersey.  Nor do the parties appear to dispute that, prior to the assault pistol falling out of Hersey's waistband, Welch and Varday lacked probable cause to arrest him.  Hersey argues, however, that the deputies violated his Fourth Amendment rights by placing him in handcuffs because doing so converted the Terry stop to an unlawful warrantless arrest.  Hersey also contends that the deputies lacked legal authority to carry out the alleged arrest because (1) he acquiesced to Welch's authority once he was on the ground, and (2) his girlfriend shouted from the upstairs window that he did not do anything wrong, thereby removing any doubt as to whether he posed a safety risk to the deputies.  Hersey's argument fails.

It was 12:30 am when Welch and Varday responded to the reported attempted burglary in North Richmond, a notoriously high crime neighborhood.  Dispatch also informed the deputies that there were only female occupants inside the house, so they were surprised to encounter Hersey walking down the front steps.  The deputies were also surprised to find Hersey by himself, as he is known to generally travel with a groups of other persons.  In addition, Welch ordered Hersey to place his hands behind his head, but Hersey refused to comply.  After Welch attempted to physically put Hersey's hands behind his head, Hersey continued to resist.

5

Hersey's conduct caused Welch to fear that Hersey might possess a weapon or be dangerous, which prompted Welch to forcibly place Hersey on the ground to subdue him.

It is true that Hersey's girlfriend shouted to the deputies that Hersey had done nothing wrong.  However, at the time that she made this statement, the deputies knew nothing about her, including who she was, whether she was an authorized occupant of the house, or whether she was telling the truth.  Given this uncertainty, it was proper for the deputies to detain Hersey to investigate the veracity of the girlfriend's statement.

The deputies' use of handcuffs was also proper in light of the continuing uncertainty regarding the alleged burglary attempt. When Welch placed Hersey in handcuffs, he and Varday remained under the impression that they potentially faced "several" suspects in an attempted burglary.  The deputies had no information as to where those suspects were; how many of them there might be; whether they were armed; or, whether they were the girls from the earlier reported incident at the market.  Coupled with Hersey's failure to comply, the deputies had ample justification to restrain Hersey to ensure their own safety.  Accordingly, the deputies did not unlawfully escalate the Terry stop to an arrest.  See, e.g., United States v. Bautista, 684 F.2d 1286, 1289-90 (9th Cir. 1982) (the brief use of handcuffs did not transform a Terry stop into an arrest where the handcuffed suspect's behavior was erratic, and

where another suspect, possibly armed, might have been in the vicinity); <u>Washington v. Lambert</u>, 98 F.3d 1181, 1189 (9th Cir. 1996) (recognizing that officers may use intrusive techniques during a Terry stop under certain circumstances, including (1) "where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight," and (2) "where the police have information that a crime that may involve violence is about to occur").

    Because the arrest was valid, the gun and ammunition seized during the course of the officers' investigatory activities are not subject to the Fourth Amendment's exclusionary rule.  To the extent that the gun and ammunition were properly seized, the Court also finds that Hersey's statements are not the fruit of the poisonous tree.

### III. CONCLUSION

    For the foregoing reasons, the motion to suppress is DENIED.

    IT IS SO ORDERED.

DATED: October 14, 2009

_____
D. Lowell Jensen
United States District Judge